The plaintiffs were orphans and infants, and alleged that the defendants, acting as a court at November Term, 1819, of Hertford County Court, appointed one George Gordon to take care of and attend to the management of the estate of the plaintiffs, without taking from Gordon bond and security as required by law; that Gordon, by virtue of such appointment, took into his hands the whole of the estate of the plaintiffs and converted a large portion of it to his own use, and since that time has died insolvent.
To support the allegation that the defendants were on the bench and constituted the court which appointed Gordon, the plaintiffs offered in evidence the records of Hertford County Court, from which it (300) appeared that on Thursday morning of the term the court met pursuant to adjournment, and the defendants were stated to be present as justices at the opening of the court, and among other orders of that day, the third entered on the record was the order that Gordon should rent out the lands of the plaintiffs, and take bond with security to their use, payable to the chairman of the court, and file them with the chairman, and attend to the management of the estate of the plaintiffs until a guardian was appointed.
The introduction of this record was opposed by defendants, on the ground that the order as entered did not recite the names of the defendants as the justices who made it. The court, Nash, J., presiding, overruled the objection, and instructed the jury that the record was prima facie evidence that the defendants were the justices who made the order.
There was a verdict for the plaintiffs; a new trial was refused and judgment rendered, when defendants appealed.
Neither a just construction of the acts of Assembly on this subject, the well known course of business, nor the reason of the thing warrants, in my apprehension, the reception of this record for any other purpose than to show that the court was opened by the three *Page 137 
justices named, and that the various orders were made by a court legally constituted. In receiving it as conclusive for these purposes, the rule of law is satisfied and the interests of justice are maintained; in receiving it as prima facie evidence even that particular persons were on the bench at the precise moment when the order in question was made may, in most cases, burthen innocent persons with a heavy charge; for this prima facie
evidence becomes conclusive unless it is answered and repelled by the defendants. The difficulty of proving who they were, in the crowded and confused state of a courthouse when the order was made, would generally be insuperable; and it is unjust that persons who are rendering disinterested services to their country should pay large sums of money for others or escape from the penalty only by proving an alibi.
The act of 1762, ch. 69, seems to have intended that the individual justices should be ascertained by some proof more specific; for when it confers the power of appointment it speaks of the court; where it imposes a penalty for the improper exercise of the power, it (304) refers to the individuals composing it at the precise point of time; thus endeavoring to guard against the very evil which the introduction of this record as evidence would produce. It is not the court, but thejustice or justices appointing such guardian, who shall be liable for all loss and damage. We must believe that the court made all these orders, because the record says so; but we cannot believe that the defendants were the individuals composing it, unless there were none others competent to form a court. It is impossible to shut our eyes to the fact that though the court may be in session throughout the day, the individuals composing it are continually changing, and of these changes no memorial is made by the clerk. Sometimes three justices are collected for the purpose of opening the court. When they have done this, they often yield their places to others, whose stay there may also be brief, and the physical identity of the court changes with every passing hour.
 — — ut unda impellitur unda, Tempora sic fugiunt pariter, pariterque sequentur.
An act passed in 1790, ch. 327, relative to the appointment of several public officers, serves to show the light in which the individual responsibility is regarded by the Legislature and the spirit in which these laws are conceived. The clerk is directed to make an entry at large, under a heavy penalty, of the names of the justices who shall be in court, or on the bench, at the time of the qualification of those officers, which would have been an useless provision if the record of the opening of the court had been evidence of the fact; and when that law was passed, a majority of the justices, or a certain number beyond three, was not necessary to the appointment of those officers. *Page 138 
My opinion is that the record was improperly received for any other purpose connected with the case than to show that these justices were present on that day when the court was opened, and that their averment that they were not present when the guardian was appointed is not in conflict with the record, which is not, therefore, an estoppel. I (305) am in favor of granting a new trial.